## UNITED STATES v. MELFI et al.

### (District Court, D. Delaware. June Term, 1902.)

### No. 20.

1. CONSPIRACY TO DEFRAUD UNITED STATES—INDICTMENT—SUFFICIENCY.

The indictment in substance charged that the defendants unlawfully conspired with one Petolicchio to commit an offence against the United States "by causing the violation" of section 5425 of the revised statutes [U. S. Comp. St. 1901, p. 3669], and that such offence "consisted in this, that by their conspiring and inducement" twenty one persons named in the indictment "should obtain, accept and receive certain certificates of citizenship" for themselves "by means of certain false statements, made with intent to procure the issuance of said certificates of citizenship to them"; and that Petolicchio "to effect the object of the said conspiracy" entered into between him and the defendants "did appear before the District Court of the United States for the District of Delaware, and the Superior Court of the State of Delaware, in and for New Castle County, sitting at Wilmington, and did then and there make certain false statements to said courts, with intent to procure, from said courts, the issuance" to the twenty one persons above referred to "of certain certificates of citizenship under the laws of the United States relating to the naturalization of aliens, which said false statements were then and there well known" by the defendants and Petolicchio "to be false, and which said false statements consisted in this, that said Giovanni Petolicchio then and there made certain statements to the said courts on a matter material to the proceedings then and there depending before the said courts and concerning which the said courts had jurisdiction," that the twenty one persons above referred to "had resided within the State of Delaware one year at least; whereas in truth and in fact the said" twenty one persons "had not resided within the State of Delaware one year at least, but heretofore lived and now continue to live in the State of Pennsylvania." Held, on demurrer, that the indictment was fatally defective, in that the object of the conspiracy as set forth did not involve a violation of section 5425 of the revised statutes [U. S. Comp. St. 1901, p. 3669], or any other offence against the United States.

(Syllabus by the Court.)

Wm. Michael Byrne, U. S. Atty.
Harry Emmons and Henry C. Conrad, for defendants.

BRADFORD, District Judge. A general demurrer has been filed to the indictment in this case which charges the defendants with a

*violation* of section 5440 United States revised statutes, as amended by the act of May 17, 1879 [U. S. Comp. St. 1901, p. 3676]. Section 5440 as amended is as follows:

"If two or more persons conspire either to commit any offence against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

The indictment in substance charges that the defendants Carmin Melfi, Giovanni D. Fellipo and Saverio Posten, alias Vito Spera, unlawfully conspired with Giovanni Petolicchio to commit an offence against the United States "by causing the violation of section 5425" [U. S. Comp. St. 1901, p. 3669], and that such offence "consisted in this, that by their conspiring and inducement" twenty one persons named in the indictment "should obtain, accept and receive certain certificates of citizenship" for themselves "by means of certain false statements, made with intent to procure the issuance of said certificates of citizenship to them"; and that "the said Giovanni Petolicchio to effect the object of the said conspiracy" entered into between him and the defendants, "did appear before the District Court of the United States for the District of Delaware, and the Superior Court, of the State of Delaware, in and for New Castle County, sitting at Wilmington, and did then and there make certain false statements to said courts, with intent to procure, from said courts, the issuance" to the twenty one persons above referred to "of certain certificates of citizenship under the laws of the United States relating to the naturalization of aliens, which said false statements were then and there well known" by the defendants and Petolicchio "to be false, and which said false statements consisted in this, that the said Giovanni Petolicchio then and there, made certain statements to the said courts on a matter material to the proceedings then and there depending before the said courts and concerning which the said courts had jurisdiction," that the twenty one persons above referred to "had resided within the State of Delaware one year at least; whereas, in truth and in fact the said" twenty one persons "had not resided within the State of Delaware one year at least, but heretofore lived and now continue to live in the State of Pennsylvania."

Under the demurrer the counsel for the defendants contend in substance, first, that "the offence charged in the said indictment is a felony under the statutes of the United States, and such being the case the said indictment is fatally defective in not charging that the offence was committed 'feloniously' "; and, secondly, that the indictment does not sufficiently or in substance charge any offence against the federal statutes. The first contention clearly cannot be sustained. It is well settled that a conspiracy, having for its object the commission of a misdemeanor or felony, is only a misdemeanor, unless it be declared by statute a felony, and further, that a conspiracy to commit a misdemeanor only is not merged in the misdemeanor when committed. The decisions are not harmonious on the question whether, in the ab-

sence of a statute, a conspiracy to commit a felony is in all cases merged in the consummated felony. Nor is it necessary for the purposes of this case to decide or discuss this point. Even if it be assumed that the indictment properly charges a conspiracy to commit an offence under section 5425 [U. S. Comp. St. 1901, p. 3669], and that the offences enumerated in that section are all felonies, the fact remains that the indictment does not charge the consummation of any felony thereunder; for it does not allege that any certificates of citizenship were obtained, accepted or received by the defendants or any of them, or by the twenty one persons, or any of them. The demurrer, therefore, cannot be sustained on the ground that the indictment does not contain the word "felonious" or "feloniously" in connection with the allegation of the commission by the defendants of acts alleged to be unlawful.

The further question is presented, whether the indictment charges against the defendants any offence against the United States. It is true that the defendants are charged with conspiring to commit or cause to be committed what is termed in the indictment an offence against the United States under section 5425 [U. S. Comp. St. 1901, p. 3669]. It is essential to the validity of the indictment that it should disclose upon its face the offence which is the object of the conspiracy. Section 5425 so far as it is pertinent to this case, provides that "every person who * * * obtains, accepts, or receives any certificate of citizenship known to such person to have been procured * * * by means of any false statement made with intent to procure, or aid in procuring, the issue of such certificate * * * shall be imprisoned," &c. The penalties of the statute are directed against any person who obtains, accepts or receives any certificate of citizenship with the scienter therein specified. The indictment does not allege that the object of the conspiracy was that the defendants, or any of them, should obtain, accept or receive any certificate or certificates of citizenship for themselves. It charges that the object of the conspiracy was that, by the conspiring and inducement of the defendants and Petolicchio, the twenty one persons should obtain, accept and receive for themselves certificates of citizenship "by means of certain false statements, made with intent to procure the issuance of said certificates of citizenship." Neither the twenty one persons or any of them are defendants to this indictment, nor is any criminality under section 5425, actual or meditated, charged against them. That section, in providing that criminality thereunder shall attach to any person who obtains, accepts or receives a certificate of citizenship "known to such person to have been procured * * *. by means of any false statement made with intent to procure, or aid in procuring, the issue of such certificate" requires for the commission of the crime that the person who obtains, accepts or receives the certificate shall be the person who has knowledge of the falsity of the statement or statements made for the purpose and as the means of procuring or aiding in the procurance of the certificate. Therefore, an indictment charging a conspiracy to commit an offence against the United States by a violation of the provisions of section 5425 in question must allege, as one of the essential ingredients of the intended offence constituting the object of

the conspiracy, that the persons, who should obtain, accept or receive certificates of citizenship, should do so with knowledge on their part that they had been procured by means of false statements made with intent to procure or to aid in procuring the issue of such certificates. There is, however, no such averment in the indictment. It is true that it is alleged that by the "conspiring and inducement" of the defendants and Petolicchio, the twenty one persons "should obtain, accept and receive" certificates of citizenship for themselves "by means of certain false statements made with intent to procure the issuance of said certificates of citizenship to them." But in the connection in which this allegation is made it does not appear what such false statements were to be, nor by whom they were to be made. On an examination of the indictment as a whole it is fairly to be inferred that such false statements were those made by Petolicchio. It is the false statements of Petolicchio alone which are alleged to have been made "to effect the object of the said conspiracy" and "which said false statements were then and there well known by" the defendants and Petolicchio "to be false."

But, further, the indictment not only omits to state the nationality of the twenty one persons, but fails to aver that they were aliens. Section 5425 [U. S. Comp. St. 1901, p. 3669] must be considered in connection with title XXX of the revised statutes of the United States [U. S. Comp. St. 1901, pp. 1329–1334] dealing with the naturalization of aliens. No court in this country has any authority or jurisdiction to naturalize persons other than aliens; and the provisions of section 5425 in question have reference solely to offences committed with respect to proceedings for the naturalization of aliens. The omission of a proper averment on this subject renders the indictment fatally defective.

In view of the foregoing considerations the indictment cannot be sustained as charging a conspiracy to commit or cause to be committed an offence against the United States under section 5425.

In Williams v. U. S., 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509, the court had under consideration the sufficiency of an indictment on the margin of which was endorsed a reference to certain statutes which, however, were not mentioned in the body of the indictment. The court held that the indictment could not be sustained under the statutes referred to in its margin; but that the indictment properly charged an offence against the United States covered by a statute not referred to in the indictment. Mr. Justice Harlan delivering the opinion of the court said:

"It is said that these indictments were not returned under that statute, and that the above indorsement on the margin of each indictment shows that the District Attorney of the United States proceeded under other statutes that did not cover the case of extortion committed by a Chinese inspector under color of his office. It is wholly immaterial what statute was in the mind of the District Attorney when he drew the indictment, if the charges made are embraced by some statute in force. The indorsement on the margin of the indictment constitutes no part of the indictment and does not add to or weaken the legal force of its averments. We must look to the indictment itself, and if it properly charges an offence under the laws of the United States, that is sufficient to sustain it, although the representative of

the United States may have supposed that the offence charged was covered by a different statute."

A distinction between the present case and that of Williams v. U. S. is that the statute, the violation of which is alleged as the object of the conspiracy, is expressly referred to not only in the indorsement on the indictment, but in the body of the indictment; while in Williams v. U. S. the only reference made to the statutes under which it was claimed the indictment could be supported was merely by way of indorsement on its margin. If it be assumed,—a point not intended now to be decided,—that the above distinction between the two cases is without substance, the question arises whether the indictment before this court properly or sufficiently charges any offence against the United States. It certainly does not charge a conspiracy to commit an offence under section 5392 [U. S. Comp. St. 1901, p. 3653], relating to perjury, for there is no allegation in the indictment that the false statements were sworn or affirmed to. Nor does it charge a conspiracy to commit an offence under section 5395 [U. S. Comp. St. 1901, p. 3654], which provides that "in all cases where any oath or affidavit is made or taken under or by virtue of any law relating to the naturalization of aliens, or in any proceedings under such laws, any person taking or making such oath or affidavit who knowingly swears falsely, shall be punished," &c. For, as before stated, the indictment does not aver that the false statements were under oath or by affidavit, nor that the twenty one persons were aliens. Much stress was laid by the District Attorney on section 5427 [U. S. Comp. St. 1901, p. 3670], which is as follows:

"Every person who knowingly and intentionally aids or abets any person in the commission of any felony denounced in the three preceding sections, or attempts to do any act therein made felony, or counsels, advises or procures, or attempts to procure, the commission thereof, shall be punished in the same manner and to the same extent as the principal party."

But the indictment does not charge that the defendants knowingly and intentionally aided or abetted the twenty one persons, or any of them, in the commission of the offence of obtaining, accepting or receiving certificates of citizenship with the scienter specified in section 5425 [U. S. Comp. St. 1901, p. 3669]. Nor does it allege the commission of that offence. Nor does the indictment allege that the defendants, or any of them, knowingly and intentionally attempted to do any act denounced in section 5425 or that they, or any of them, counseled, advised or procured, or attempted to procure the commission of such offence. Nor does the indictment charge a conspiracy to violate section 5427 [U. S. Comp. St. 1901, p. 3670]. It charges the defendants with conspiracy to commit what is termed an offence under section 5425 and not with the violation of section 5427. The defendants are charged with conspiracy under section 5440 [U. S. Comp. St. 1901, p. 3676], as amended, the punishment for which is substantially different from that provided for a violation of section 5427. The authorities cited by the District Attorney, and which have been carefully examined by the court, doubtless enunciate sound principles of law, but are wholly inapplicable to the decision of the present case. I am

not aware of any statute of the United States which can support the indictment as it has been framed.

It may further be added that the defendants have a constitutional right "to be informed of the nature and cause of the accusation." In Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, Mr. Justice Brown, in delivering the opinion of the court, said:

"While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as shield the innocent, and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove."

But in the same case Mr. Justice Brown further said:

"The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. * * * Even in the cases of misdemeanors, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offence intended to be charged, not only that the former may know what he is called upon to meet, but that, upon a plea of former acquittal or conviction, the record may show with accuracy the exact offence to which the plea relates."

The indictment here, if it can be supposed to charge any offence, wholly fails to meet the requirements recognized as essential by the Supreme Court of the United States. It does not impart to the defendants the information which they have a constitutional right to receive from the government before being placed on their trial.

The demurrer is, therefore, sustained on the ground that the indictment does not sufficiently or in substance charge any offence against the laws of the United States.